Case number 23-1196, USA et al. v. Allstate Insurance Company et al. Oral argument, 15 minutes for plaintiffs, 15 minutes to be shared by defendants. Mr. Armas for the appellants. You may proceed. May it please the court. I am Alfredo Armas and I represent the Relators MSPWB and Michael Angelo in this case. Judges, I don't like addressing matters in a vacuum. And I think some history is a little bit important in this case. In 1980, Medicare was really on the verge of insolvency. Medicare had a quirk that was idiosyncratic to it and was strange for any health insurer. And that was that it didn't seek subrogation. As a matter of policy, Medicare paid for its members' health care. In 1980, Congress passed the MSP Act, the Medicare Secondary Payer Act. And from that moment on, it mattered whether a member fell at Kroger or a member was in an accident that was insured by Allstate. And Medicare was supposed to be the payer of last resort. And all of these insurance companies were supposed to step up and pay before Medicare paid. This is pretty much all in your briefs. I mean, what's the punchline? That this is important fraud that needs to be brought to the government's attention? What's the punchline? It will segue into Section 111 reporting and why that became important. Because the Medicare Secondary Payer Act simply wasn't working because the insurance companies kept lurking in the dark. They weren't notifying Medicare of their primary obligations. The problem seems to be that the fraud is the failure to pay or to reimburse the government for the monies they've advanced. And the reporting requirement is related to the overall scheme. It's something Congress imposed because they wanted the providers, or they wanted the insurers to disclose this information. But the real fraud is the failure to pay. There's no penalty associated with the 111 forms. It's a notification that's provided, but there's no additional monetary sanction associated with the failure to prepare the 111s. The failure to pay, of course, is the sine qua non of the cause of action. But the reason for Section 111 is because it is impossible for Medicare to know when a primary payer is primary. There's no way, unless they self-report. Think of it as the equivalent of filing a tax return. Yes, my obligation is to pay on income that I made. But if I don't file a tax return, there are 1099s, etc., so it's not a perfect analogy. But the government has no way of knowing that it's being defrauded, that I am avoiding my payments. So Section 111 is key. But one way it would know about this scheme is by these prior cases that were filed. That's what we care about, is the fact that there were earlier False Claims Act relators who filed cases who disclosed that Allstate, for example, was not paying, reimbursing the government, was holding reverse false claims. Those two cases, that's Takamoto and Hayes, really weren't disclosing anything. Well, that's, I mean, that seems to be the more relevant discussion point. Let me go to that, because we look at Takamoto. What does Takamoto say? Takamoto was a gentleman that is saying, listen, this Section 111 requirement is impending. It is looming. Those are the words that he uses in his complaint. And he's the master of his complaint. And I want the insurance industry to hire me as an outsource compliance officer to make sure that they are compliant with the MSP Act. He doesn't know anything about what they are doing, how they are complying. Indeed, Judge, he cannot say what is going to happen, because implementation of Section 111 hasn't even taken place. That's Takamoto. Takamoto was dismissed on a Rule 8 standard, not even a 9B standard. The magistrate dismissed it. Hayes brings absolutely nothing to bear, other than saying, listen, I'm a personal injury lawyer, and these insurance companies are passing off their liability, their MSP liability, on us. They are saying, you need to indemnify me, insurance company, on a release, if in fact you're a Medicare beneficiary and you haven't paid. What's the material additional information that the 111 information that you brought forward provides the government? Because they've already been told there's these companies that aren't reimbursing the way they're supposed to reimburse. And so government, you're being defrauded. Well, here's the reverse false claims. Here's what is supposed to happen after Section 111. After Section 111, these insurance companies are supposed to raise their hand and say, I am primarily liable, and from this moment on, I will undertake responsibility for the medical fees from the client. That's number one. Number two. Well, it's all the same pot of money that was already at issue in the original complaints. Yes, it's the same pot of money, but they're not filing their tax returns. That's the key here. The key isn't that they owe money on income that they've made, but that's a general allegation. And incidentally, I really want to dive into Hayes and Takamoto because they really don't say anything. They really did not bring anything to bear. We have brought to bear the following. We've been litigating against these insurance companies for over 10 years. As a result of that, let me tell you what MSP does. MSP obtains assignments from healthcare providers, what we used to call HMOs or Medicare Advantage Organizations. Think UnitedHealth. And... I mean, I agree you're bringing more information. I'm not questioning the validity of the company you've created, or has been created. But it's got to materially change the claims. And I mean, it added more information. But at the end of the day, it's the same money that weren't being reimbursed. Judge, I get that. They're being disclosed even in a different way. There is a reason. There is a reason why Section 111 was passed. It was an important reason. The purpose of the Medicare Secondary Payer Act was not being met. The insurance companies continued to be scofflaws. They weren't self-reporting. The governor knew they were scofflaws. I'm not saying it's not important. It could be the most important thing Congress has done in the last 30 years. But it didn't change the fact that the fact that they were scofflaws was purportedly revealed in the initial cases. And we are offering, we are bringing to bear how this fraud is committed in conjunction with ISO, which purports to be a compliant officer, what Takamoto wanted to be, and which puts their imprimatur on these quarterly reports that all of these insurance companies file saying that they are compliant. These are ongoing violations. Now, we also bring to bear depositions. Ongoing violations, but they were going, they were, violations already occurred. The failure to reimburse the money to the government already happened. That is true. It was already wrongfully held by Allstate. We also allege that it is a reverse false claim every time, every quarter that they certify that they are compliant. That's a false claim. That in itself is a false claim. It's a false claim because it's not really a false claim. It's a false attestation on some other form that's relevant. That's exactly correct, Judge. That is exactly. You then in effect say infects every legitimate, quote, legitimate claim that's made because of the false filing or failure to file. And they do that every quarter, and that's what we allege. We also bring discovery to bear, as did the relator in Majestic Waters, Blue Waters. We have taken depositions of the Allstate executives. They don't obtain Social Security numbers. They are meant to fail. There is no possibility that there is going to be compliance with the Medicare Secondary Payer Act or with Section 111 if they don't obtain Social Security numbers, and they do that less than 20%. Now, we have amassed all of this data, and we go to the public records and obtain ambulance records, obtain police reports, crash reports, and we sift them all together, bump all of our data, health care data, health care that's been provided to Medicare members, and then obtain the reason for that medical care was an accident. And then we go to the accident, and we determine that Allstate was an insurer. Allstate was providing no-fault insurance. And then we go to the Section 111 reports, which are also public. And when we compare them and see there were 21,000 incidents where Medicare members received medical care as a result of an accident where Allstate was the insurer and should have been the primary payer. And then we go to the Section 111 reports, and there is a 72% failure rate that they are not complying. They are not providing their Section 111 reports. That judge is an original source bringing a lot of evidence to bear. Not what Takamoto did, not what Hayes did. All that Hayes did was, gee, I'm a personal injury lawyer, and these insurance companies seem to be sloughing off to me and to my client their liability. He doesn't know whether, in fact, they were compliant. He doesn't know whether they were paying Medicare or reimbursing Medicare. All he knows is that they are saying, you need to indemnify me. I can imagine the district court judges... Your time is up, but are these more examples of the same... Is this a different scheme? A completely different scheme. A completely different scheme that could not have been undertaken until Section 111. I know what you're saying. You're saying the violation is not reimbursing. The violation is non-payment. But that's always a violation. You can't get that level of generality and say, every time that somebody alleges, even though they have no evidence to bring, every time somebody alleges that, hey, that's a private disclosure. It is not. Today is the attack on Pearl Harbor. So there's nothing to report. Nothing new happened. The New York Times already reported that the Japanese Navy, in a surprise attack, without a declaration of war, attacked the fleet in Port Arthur in 1904. These are completely different situations. It is... There's also... Okay. I think you would say five minutes for... I did say five minutes. Thank you. Thank you very much. Yes. Thank you. Good afternoon, Your Honors, and may it please the Court. The District Court properly dismissed this case... All right. You'll be using 12 minutes? Yes. Yes. Thank you. And ISO's counsel will be using the other three. The District Court properly dismissed this case with prejudice. As Your Honor noted, the gist of this complaint is an industry-wide scheme to avoid payment in the rare situation where an expense is conditionally paid by Medicare and insurer is obligated to provide reimbursement. This is nothing new. That is exactly the scheme that Hayes and Takamoto alleged. Now, it's true that the complaint in this case focuses heavily on compliance with Section 111. And Section 111 requires insurers to report a host of cases and try to find, again, relatively rare situations where Medicare ended up paying for something conditionally that should have been paid for by an insurer. Why would it be... You keep using the term rare in the sense that... Help me with this. If somebody, you know, ends up in the hospital with their broken leg and they have a Medicare card and they give the Medicare card, now maybe they don't know who's primary, why is that so rare? Am I missing the way things tend to happen? Not tend to happen, but if you have millions of insurers, then it's not that rare, or is there something that I'm missing about the way the real world works? It's my understanding, Your Honor, that when you or I gets in a car accident, we report that claim to our insurance company. And the insurance company gives us information about how to report the expenses. I mean, you might, but if you show up at the hospital and they say, you know, well, what insurance do you have? And maybe the person does have an Allstate card, but they give them a Medicare card. I mean, isn't that what the more likely thing is? I mean... Well, I think we could debate what's more likely. I think if we ever got to... Not that it's more likely each time, but it's likely enough to happen a lot.  I'm supposed to be an educated person. My wife's a health care lawyer. But when I go to the doctor and say, here's my wallet, take what you want. It's certainly the case, Your Honor, that it does happen. And that's why this situation agrees. That's why this situation exists. But the reverse false claim, if there is one, is not a failure to comply with a reporting obligation. That is not a violation that is actionable under the False Claims Act. In order for there to be a fraud actionable under the False Claims Act, the relators would have to allege that there was a payment obligation that the insurance company knew about and failed to honor. That's the reverse false claim. And that is the same kind of claim that Takamoto and Hayes alleged. Your friend on the other side would say the Section 111 requirement, that's an obligation to disclose all of those amounts that are owed. And you're failing to disclose those. So, at a minimum, it's furthering the initial fraud. But maybe it's a new genre of fraud that is a material addition to the False Claims Act theory. I'm going to answer that question in two ways, Your Honor. First of all, in order for there to be a False Claims Act claim at all, the relators have to allege with particularity at least one actual reverse false claim. One obligation, established obligation for an insurer to pay that it willfully ignored. And we don't have even that in this complaint. So, the allegations that are being made here focus on noncompliance with Section 111, although even there, there isn't one alleged. That's a different, that's just a pleading point. Well, but they're related, Your Honor. You heard. I'm not saying it's a wrong point. It's not, it's a pleading point. Well, and we do make both arguments, Your Honor. And. Well, see, I'm not, it's different. I understand. It's a sufficiency, their pleadings were insufficient to even identify the false claims that, or the reverse false claims that were held by Allstate. Well, the, the, I think the, one of the reasons I'm making this point, Your Honor, is to illustrate the connection or more importantly, lack thereof between the Section 111 alleged violation and a reverse false claim. So, if you look at the allegations in the complaint, most of this complaint is law, regulations, background on the industry, and, and conclusory statements. There are really just a couple of pages of actual facts that are purportedly alleged. One of them is allegations about an exemplar named E. A., who was hit by a car, allegedly assigned under the Michigan Nose Vault statute to the Allstate Insurance Group, which allegedly failed to report his identity. But we don't have any facts alleged that would enable the court to find that the insurance company actually owed something on that claim. We don't know, for example, that the insurance company, whoever it was, because Allstate Insurance Group is actually not a named defendant, but there are no facts alleged to show that Allstate, whoever it is, actually knew about E. A. at the time, that they actually had an obligation to pay for. Suppose, suppose, suppose I thought there was one that was alleged, kind of along the lines of what your friend on the other side said and what I've described. What's the legal answer? So I get these, I get the sufficiency of the complaint answer. What's the answer to the legal discussions we've had about sort of how this all works? You have this new reporting requirement, but it arguably is just a variation on the same theme, which is that you didn't, you're holding monies owed to the government. What's, and your friend says, your friend on the other side says, no, so this is a new obligation, you're required, it's furthering the scheme in a way that maybe the government wasn't aware of. So, first of all, talk, the argument you've heard here is that they, these relators are the first ones to come forward post-implementation of Section 111 to say this Section 111 thing is really a problem and it's related to this alleged false claim thing. There are a couple of problems with that. First of all, Takamoto was all about Section 111. It was about the impending requirements. It was pre-111. It was, but the amended complaints were filed after. And everyone knew. 111 violations hadn't happened at that point. That is correct. Let's just like give, can we just like accept some of the things, or just, is there other, can you just go to the, maybe I'm not expressing it very well, but. Assuming we thought, assuming we thought that wasn't about 111 or this is added, this is at least added new information about, about the failure to disclose certain information that was required by these reforms. Well, if, if the court concludes that there, that this complaint did materially add information, then I think we would urge you to begin to look at the 9B arguments because that sort of assumes away the public discussion. I'm trying to figure out what information, alright, then how about this? What's material? Is it material that they, that they haven't, that they, that they've now shown that they failed to follow, failed to file the 111 requirements as required? It's not material, Your Honor, because in Takamoto, Mr. Takamoto said, I've talked to Allstate and Allstate isn't equipped to comply with Section 111. And now these plaintiffs are saying, we've looked at it and we conclude that Allstate wasn't equipped. To comply with Section 111. Now, if you assume that's, obviously for purposes of today, we're assuming that's true. We would, of course, vociferously dispute it. But, but it's simply, the allegation in Takamoto was Allstate's not going to be able to comply with 111. And the allegations by these relators are, Allstate isn't complying with 111. There isn't a material addition there. It's simply the same theory. Maybe I just misunderstood this case. I thought the problem was, I thought the problem was that there were, there were reimbursements that were not being paid by Allstate. And that these original complaint, these original False Claims Act cases that we're saying were the original public disclosures, explained this scheme by Allstate and others, let's say, to failure, failure, their failure to reimburse the government. Yes. And that's the pot of money. And it's the same pot of money. It's the same claims. And now there's additional information. There's additional cover-up, let's say, by insurers just taking the plaintiff's word for it. But I would have thought that one answer was that we're still talking about the same original pot of money that the government was alerted to, that those claims were not being paid. And the government is on notice to investigate them. And this information, this new information is important, but maybe not material in the sense that we think about it for whether it's an original public source or... I, so I agree with that completely, Your Honor. There's a number of problems with what the relate... There are a number of problems with what the relators are saying about the public disclosures. First of all, we look to this complaint to evaluate how general or specific the public disclosure needs to be. These relators can't require more of the public disclosure than they've actually provided in their complaint. Secondly, the gist of the reverse false claim alleged in all of these cases is a failure to comply with payment obligations to repay conditional payments paid by Medicare. That is the pot of money. That is the reverse false claim. That is the important thing. And that is the only thing that can be the basis of a claim under the False Claims Act. What the relate... It is also true, third argument, that the relators are saying, we've added something new because we're pointing to the failure to comply with Section 111. Failure to comply with Section 111 is not actionable under a reverse false... under the reverse... Sorry, under the false claims...  It is giving the government information they maybe didn't previously have. It may be. It may be, but that information isn't material to the reverse false claim itself, which is a failure to comply. The government knows about this problem. That's why the government enacted Section 111. And actually, since we filed our briefs in this case, there's now been a final rule adopted by CMS that now prospectively provides for $1,000 fines in the future. There was an allegation in the case that there's also a failure to comply... a failure to make a payment because of these fines, this $1,000 fine. There's not been a rule in place to impose those fines. It's never been a thing until in the future when this new rule goes into effect. But the other thing is that the final rule takes into account all kinds of innocuous reasons and good faith reasons why an insurer might not be able to comply with Section 111. For example, we talked about social security numbers a moment ago. The allegation is simply that the insurance companies don't obtain the social securities numbers. That doesn't mean they don't ask for them. That just means that the person doesn't provide them. And if an insured doesn't provide a social security number, then the insurance company can't figure out whether the insured is also covered by Medicare and make that disclosure through a Section 11 report. And so CMS is, of course, in the best position to evaluate what is or is not inexcusable noncompliance with something like Section 11. And it is doing that through its rule and regulation because ultimately the Section 111 thing is a regulatory issue. It is not a False Claims Act problem. The only False Claims Act issue in this case is a failure to pay. And we actually don't have, moving to the 9B argument, even a single instance where the plaintiffs have alleged a false claim where an insurer knew about an obligation and knowingly failed to pay it. None of the examples, the chart that was provided, which provides almost no information at all, it certainly doesn't reveal that there was any claim that was within policy limits that the insurers knew about and that was causally related to the accident. I need to mention one other thing, Your Honor. There was an argument here about a Third Amendment complaint. The briefs filed by the appellants do not argue, nor could they, that it was an abuse of discretion for the District Court here to deny leave to amend when that Third Amendment complaint was not offered until after final judgment was entered. Nor do they argue that it was not an abuse, that it was an abuse of discretion for the court to hold what it did on a motion for reconsideration. So there's fundamentally a problem about the standard of review here that the appellants have failed to acknowledge. Thank you. Folland?  Folland. Yeah. Three minutes? Yes. Thank you, Your Honor. So may it please the Court, I'm Robert Folland from Barnes and Thornburg. I'm here on behalf of Insurance Services Office, Inc., also known as ISO. And we are very differently situated from the other defendants in this case because ISO is not an insurance company. Rather, it's a data and an analytics company which provides services to the insurance industry, which I think is a very important distinction in the manner in which ISO was bolted on at this complaint with one of the amendments that came down, at least after the original complaint was filed. At least with respect to the iteration of the complaint that's before the court now, the only articulable facts relate to a product called ISO Claim Search, which is a product that ISO provides to the insurance industry whereby if they sign up for the service, they provide claim data. For example, a car accident occurred on this state, these are the people involved. And in exchange for that, they get to share in industry-wide data with respect to the claims that are out there. And it's used for the purposes of investigating claims fraud. For example, if there's an individual that falls in the Kroger store three times on three different insurance policies, it's good to know that and look across different policies and different insurance lines and it's a way to detect fraud. For whatever reason, an affiliate of ISO obtained a subscription to ISO Claim Search at some point in the past. ISO determined that that was obtained in violation or that at least they were violating the contract rights and so that contract was canceled. Significantly, we're not here on a contract dispute. There's no claim that ISO violated the terms of the contract by canceling it. You have contracts with both sides, right? We do. I mean, for the purposes, we don't concede that the contracts as articulated in the complaint with respect to all state are correct. For the purposes of today, we're forced to concede that because we're here on a motion to dismiss, obviously. But, yes. I don't know if it's legally relevant. It's just kind of interesting that you're contracting with both sides in the dispute, in a sense. Providing information to both sides. The purpose, this is not a non-profit. It's truly to detect fraud. So, yes, we did contract with MSP, but ISO would say that that was done due to MSP misrepresenting the terms on which they were signing up, which again is why that contract was canceled. But in any event, what gave rise to the complaint against ISO, the only demonstrated facts are that the contract was canceled. And again, there's no dispute that, at least it has been raised, that that was a breach of contract or that was improper. The allegation is that somehow is evidence of a fraud, which requires multiple inferential leaps that just, you know, aren't present anywhere in the document. Okay, thank you. Thank you.  In response, I want to address how the District Court characterized this claim. Taken as true, the relators established a fraud injury on the United States due to defendant's failure to satisfy Section 111's reporting requirements. Due to that failure, there is a fraud injury on the United States. That's it. It is, I can't think of a better example than a failure to file a tax return. Absent 1099's. Assume that the only way that the government knows that I have earned income is when I voluntarily submitted in a tax return. You can see the fraud, the concealment, the act of concealment, even under a statutory obligation, is a fraud and an ongoing fraud. And there is a penalty, if you look at the statute, of $1,000 per claim per day. A penalty for failure to come forward and say I am the primary payer. This is an ongoing fraud and we are the only, the only relators to ever bring this. The penalty is not really a reverse false claim, right? Right? It's not monies that were paid to your reverse false claim, it's monies that you are holding that should be paid to the government. It is, because these are obligations that they had. No, I don't think, I don't know, briefcase. Are you saying that every failure to pay a fine is a fraud? No, Judge, no. It's trouble damages, trouble damages. What I am saying is the failure, the active concealment of the insurance company's liability is a fraud. The concealment, the failure to disclose. Yes, I can commit fraud by filing a quarterly report saying I am fully compliant with Section 111. Judge, I do want... Failure to disclose that Joe Blow wasn't insured of ours. Is that, I mean, what is it that you failed to disclose? That is it. And, which leads, ineluctably, to Joe Blow was injured in an accident where we were the insurer and Medicare picked up the bill. That, Judge, is a fraud by concealment. It was identified by the district court. They are required to file an individual form for every Joe Blow? Yes, Judge. They are supposed to raise their hands and say I am the primary payer here. Medicare, if you have already paid, let me reimburse you and I will now, forward, undertake responsibility for any ongoing medicals. That is the ROM part. I will undertake responsibility for ongoing medicals for Joe Blow's injury as a result of that accident. None of this has happened. They have to know not only the injury but that he is seeking medical help for. Yes, sir. How do they know that? They know that because a claim is filed. What is the first thing that you do? You file a claim with your insurance company. If you don't, the provider immediately obtains the information. Why are you here? What happened? I was in an accident. Do you have auto insurance? Yes. Let me see your PIP, your no-fault insurance. And they immediately start going to Allstate and saying Allstate, you need to pay up. What Allstate is doing is they receive that notice and they are saying, you know what? Medicare is going to pay because that is a Medicare and relief. And they don't step forward. It is what is alleged. And I understand what the court is saying. To whom do they do that to? I'm sorry? When they get the claim, they give it to whom and say we are not responsible? They report to the provider. In these cases, in the 72% of the 21,000 cases that we queried, the provider, The hospital you mean? The hospital, but generally we are looking at under $10,000 claims. So you are looking at... Stay behind that. I apologize. That's okay. I apologize. But you are looking at a primary provider, a primary care provider, a PCP. You go to your doctor and say I was injured, I'm suffering from whiplash. The PCP obtains the car insurance information, queries Allstate, and then Allstate, if they haven't paid, they've been put on notice that they are the provider of no-fault insurance, that their insured has been injured, that their insured is receiving medical coverage, and that their insured is a Medicare beneficiary. But they don't pay. And we've established that they didn't do that 72... What does the hospital do in that case? The hospital does the same thing. That's how we obtain the information. The hospital does what? I apologize, Judge. The hospital will notify Allstate that their insured was injured, that their insured was transported to the hospital. And then they tell the hospital go to hell? Well, I don't know if they go out and say go to hell, but Medicare, because of the quirk in the law, because Congress doesn't want to impose on primary care providers the obligation of being out-of-pocket and not getting reimbursed, that would create an impossible chokehold. So Medicare is permitted to make conditional payments. I'm probably older than anybody in this room by considerable age. And whenever I go to a provider or a hospital, first question they ask is, is this caused by an accident? Is your condition due to an accident? That's correct. That's correct. And that's to... And if I said yes, I'd say who's insured. And then they take over the collection. You are absolutely correct. And they will also ask, are you a member of Medicare? And the hospital will bill everybody and anybody. They will bill Allstate. They will also bill Medicare. How do we know that? Well, we've queried. We have actually obtained the information of when the Medicare member went to the hospital, received treatment, and we have bumped that up to see what caused the treatment. By looking at the public disclosures of accidents, we obtain the information. So now we know that a Medicare enrollee was injured as a result of an accident, an accident where Allstate was the insurer. Now we have that massive information. We have 21,000 of those. And we go to the public records through a company called MyAbility because we were closed out of ISIL's records. And MyAbility says, you know what? Allstate didn't report Section 111 ongoing responsibility for medicals in 72% of these cases of the 21,000. That's astounding. That cannot happen by accident. But regardless, it is a liability that exists. And the failure, the failure to report the act of concealment by not filing those Section 111 reports and raising their hands is a fraud, Judge. Thank you. We're all done. Thank you very much. Thank you so much. The case is well argued. It will be submitted. Thank you very much.